WO

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Fairfield Homes, Inc., an Arizona corporation, Fairfield Green Valley, Inc., an Arizona corporation,<br><br>Plaintiffs,<br>v.<br><br>Granite State Insurance Company, a foreign corporation; Chartis Specialty Insurance Company, formerly American International Specialty Lines Insurance Company, a foreign corporation; American Casualty Company of Reading Pennsylvania, a foreign corporation; National Fire Insurance Company of Hartford, successor by merger of Transcontinental Insurance Company, a foreign corporation,<br><br>Defendants. | CV 09-360 TUC DCB<br><br>**ORDER** |

The only remaining Defendants in this case are Granite State Insurance Company (Granite) and Chartis Specialty Insurance Company (Chartis). On February 14, 2011, the Court entered Judgment on crossmotions for summary judgment filed by Plaintiffs and Defendant Granite in favor of Plaintiffs in the amount of $190,645.85. The Court denied a motion for summary judgment filed by Chartis. The Court did not rule on questions of bad faith and left them to be decided after discovery. The Court's interpretation of the Granite insurance policy was limited to a question of law, and the Court did not reach the numerous evidentiary challenges raised by the parties.

On February 28, 2011, Granite and Chartis filed a Motion for Reconsideration, and Granite filed a Motion for the Court to Amend its Order of February 14, 2011, to allow for an interlocutory appeal, pursuant to 28 U.S.C. § 1292(b). The Court, however, does not need

to decide whether to amend its Order to allow an interlocutory appeal because the Plaintiffs stipulate to dismiss the bad faith claims against Defendants. Consequently, the Judgment becomes final and appealable as to Granite, pursuant to Fed. R. Civ. P. 54(b). Plaintiffs filed a Motion to Stay the case against Chartis in the event of an appeal being filed, subsequent to the Court's ruling on the Motion for Reconsideration. If the Court of Appeals sustains the Judgment against Granite, then Fairfield will dismiss its claims against Chartis because Granite will be responsible for Fairfield's damages. If reversed, then Fairfield will proceed against Chartis on the umbrella policy.

For the reasons explained below, the Court affirms the decision to grant summary judgment for Plaintiffs against Granite. Given Plaintiffs' voluntary dismissal of its bad faith claims against Granite, the Court amends its Judgment and enters a final Judgement against Granite.[1] The Court will stay the proceeding against Chartis, pending any appeal being timely filed by the parties. Otherwise, all deadlines set in this Court's Order filed on February 14, 2011, commence running as of the filing date of this Order.

## Motions to Reconsider

Motions to reconsider are generally treated as motions to alter or amend the judgment under Federal Rules of Civil Procedure ("Rule") 59(e). *See In re Agric. Research & Tech. Group, Inc.*, 916 F.2d 528, 542 (9th Cir. 1990); *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 505 (9th Cir. 1986). A motion to amend a judgment based on arguments that could have been raised, but were not raised, before judgment was entered may not properly be granted. 11 Wright, Miller & Kane, Federal Practice and Procedure: Civil 2nd § 2810.1 at 127-28; *see Demasse v. ITT Corporation*, 915 F. Supp. 1040, 1048 (Ariz. 1995) (a Rule 59(e) motion may not be used to raise arguments or present evidence that could have been

---

[1] The Judgment as to Granite is final, except for the question of attorney fees. (Doc. 112: Plaintiff's Motion for Attorney Fees.)

raised or presented prior to judgment); *Williams v. Poulos*, 11 F.3d 271, 289 (1st Cir. 1993) (proper to deny Rule 59(e) request for relief not requested in amended complaint).

Specific grounds for a motion to amend or alter are not listed in the rule, but generally there are four basic grounds for a Rule 59(e) motion: 1) the movant may demonstrate that the motion is necessary to correct manifest errors of law or fact upon which the judgment is based; 2) the motion may be granted so that the moving party may present newly discovered or previously unavailable evidence; 3) the motion will be granted if necessary to prevent manifest injustice, such as serious misconduct of counsel may justify relief under this theory, and 4) a motion may be justified by an intervening change in controlling law.  11 Wright, Miller & Kane, Federal Practice and Procedure: Civil 2nd § 2810.1 (citations omitted).

Alternatively, a court can construe a motion to reconsider as a Rule 60 motion for relief from a judgment or order.  Under Rule 60, a party can obtain relief from a court order for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud; (4) the judgment is void; (5) the judgment has been satisfied; (6) any other reason justifying relief from the operation of the judgment. Fed. R. Civ. P. 60(b).

Consequently, motions to reconsider are appropriate only in rare circumstances to correct manifest errors of law or fact or to present newly discovered evidence.  *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985) (1986).  A motion for reconsideration should not be used to ask a court "to rethink what the court had already thought through--rightly or wrongly".  *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983); *cf., Agric. Research & Tech. Group,* 916 F.2d at 542.  Arguments that a court was in error on the issues it considered should be directed to the court of appeals.  *See Refrigeration Sales Co. v. Mitchell-Jackson, Inc.,* 605 F. Supp. 6, 7 (N.D. Ill. 1983).

Defendants argue that the Court should reconsider its Order because it made several manifest errors. Defendants argue that the Court erred in concluding that subsidence must be the "sole cause of loss" in order for the Subsidence Exclusion in the Granite policy to apply; the Court erred in determining that the Subsidence Exclusion applies solely to natural phenomena; the Court erred in denying summary judgment on the bad faith claims because Plaintiffs offered no evidence to even raise such a claim. Finally, Granite argues the Court should modify the Judgment to reflect a $30,000 setoff based on Fairfield's settlement with CNA.

**1.      Whether this Court's Conclusion that Subsidence Must be the "Sole Cause of Loss" is Manifest Error.**

Granite's objection focuses on language taken from page 9 of the Court's Order, which taken out of context from the preceding and subsequent sections of the Order is confusing. For clarification, the Court provides the following explanation.

Granite is wrong when it asserts that Arizona courts have directly and explicitly rejected this Court's conclusion "that an exclusion applies only if the excluded risk is the 'sole cause of the loss." (Motion for Reconsideration at 8.) Granite bases its assertion of manifest error on the use of "arising out of" language contained in the policy subsidence exclusion.

The Granite policy excludes liability "arising out of" land subsidence. In its Motion for Summary Judgment, Granite relied on *Miller* and *Holly Trinity,* cases involving exclusions which expressly and unambiguously excluded losses involving concurrent causes. The Court found that the "arising out of" language in the Granite policy did not sweep as broadly as the exclusions in *Miller* and *Holy Trinity*. This is what the Court meant when it wrote: "Without the concurrent cause language, the exclusion only applies if subsidence was the sole cause of the loss, . . . , which is the argument made by Granite." (Order at 9.)

4

In other words, without the broad exclusionary language found in *Miller* and *Trinity*, which reached any loss involving subsidence whether the loss was caused directly or indirectly by subsidence and/or resulted from some other sequence of or concurrent causes, the Granite policy excludes only liability caused by subsidence.

The Court noted that Granite in fact argued Fairfield's losses were *solely* due to subsidence. (Order at 9), *see also* (Order at 6 (citing Granite's MSJ at 4)). The Court rejected this argument based on the evidence presented by Granite, which included the Cooper and Leavitt complaints and the Cooper mediation documents. The Court found these documents did not *solely* allege subsidence, but also included allegations of losses due to poor workmanship by building on improperly compacted soil, failure to remove expansive soil, failure to perform quality control testing on the lots, etc. (Order at 6 (lns. 19-27)- 7 (lns 1-5), 8 (lns. 24-28)-9 (lns. 1-3). The Court found that these causes were not excluded under Granite's policy.

The Court found that this was in keeping with Arizona law, which "recognizes that an act or force need not be the sole cause of damage for causation to exist." (Order at 9.) The Court compared the "arising out of" language used in Granite's policy with the more expansive concurrent cause language used in the *Miller* and *Holy Trinity* policies. The Court found the "arising out of" language was ambiguous for the purpose of excluding coverage for liability concurrently caused by other covered occurrences such as those alleged here: poor workmanship by improperly compacting soils, failing to remove expansive soil, failure to perform quality control testing on the lots, etc. (Order 9-11.)

Granite makes its argument for the first time on reconsideration that, under Arizona law, "arising out of" language makes an exclusion applicable even if the excluded risk is not the direct proximate cause of the loss. (Motion for Reconsideration at 6-8.) The Court has reviewed Granite's Motion for Summary Judgment and Reply without finding this argument. Granite also did not make the argument that it now makes that "the evidence clearly indicates

5

that the poor workmanship and subsidence were inextricably linked, such that poor workmanship would not constitute a 'separate' cause of loss." (Motion for Reconsideration at 8.) Neither argument is consistent with the summary judgment argument that subsidence was the sole cause for Fairfield's losses.

The Court stands by its assessment of the Granite policy, which is that its subsidence exclusion, precluding liability "arising out of" subsidence, does not apply to liability "arising out of" Fairfield's poor workmanship as was alleged in the Cooper and Leavitt complaints and Cooper's mediation documents.

**2.  This Court's Conclusion that the Subsidence Exclusion Applies Only to Natural Phenomena Ignores the Nature of General Liability Insurance and is Manifest Error.**

Granite argues that its policy was a general liability insurance policy which could never cover a contractor for damage caused solely by natural phenomena, and therefore, its exclusion necessarily required that some "person's acts or omissions contributed to cause the damage." (Motion for Reconsideration at 10.) Granite charges, "[b]y construing the Subsidence Exclusion as being limited to damage caused solely by natural phenomena, the Court has rendered the Subsidence Exclusion meaningless . . . ." *Id.*

In its Motion for Summary Judgment, Granite argued that in other jurisdictions, courts have decided that land subsidence exclusions in general liability policies unambiguously apply to "any causes, manmade, or otherwise." (MSJ at 7 (citing City of Carlsbad v. Ins. Co. of the State of Pa.*, 180 Cal.App.4th 176, 182 (4th Cir. 2009). Granite asserted that the rationale for applying the Land Subsidence Exclusion to human-caused subsidence is even stronger in the context of general liability insurance because such insurance covers wrongful acts by the insured, rather than acts of nature. "If the Land Subsidence Exclusion were interpreted as being limited to natural disasters, the exclusion would be meaningless." *Id.*

In its Response, Fairfield argued that the Granite policy was an "all risk" policy by its terms, which covered bodily injury and property damage, except for those excluded. (Response at 4.)

In its Reply, Granite did not challenge Fairfield's assertion that the Granite policy was an "all risk" policy. (Response at 4.) It only mentioned its policy was for Commercial General Liability in the context of explaining why it was irrelevant that its policy exclusion did not include language reaching subsidence whether combined with water or not. It explained that such language might be important in the *Miller* and *Holy Trinity* cases where the insurance agreement covered water damage, but its policy did not. (Doc. 83: Reply at 10.)

The Court recognized that the parties were at odds as to whether the policy was an "all risk" policy or not. The Court recognized that Granite's argument cuts against the subsidence exclusion applying only to natural phenomena, but that Fairfield made an equally persuasive argument that the exclusionary clause will not reach manmade subsidence unless it does so expressly. (Order at 11.) Without finding one way or the other, the Court found an ambiguity in the policy and construed it against the insurer, Granite. *Id.* Consequently, the Court answered the question presented by the parties in their crossmotions: whether the Granite subsidence exclusion applied only to natural occurring phenomenon and not to manmade events. The Court, finding the policy ambiguous, applied the exclusion to only naturally occurring phenomena.

Additionally, the Court found that even if Granite's policy reached manmade subsidence, the Granite policy does not "preclude liability where there are concurrent causes and one is covered and one not." *Id.* The Court ruled as a matter of law only because it found the exclusion was ambiguous, otherwise, material questions of fact exist as to the proximate cause of the cracked walls and floors. (Order at 11.) Therefore, even if Granite prevailed on this argument on reconsideration, the Court would deny summary judgment.

**3.     Whether Fairfield's Complete Failure to Identify any Issue of Fact under which it Might be able to Prove Bad Faith Requires Summary Judgment in Favor of Granite State and Chartis.**

Plaintiffs voluntarily dismiss their bad faith claims.

**4.     Whether in the Alternative, the Judgment should be Amended to Include a Setoff of the $30,000 Settlement that Fairfield Reached with CNA.**

Granite did not dispute the amount of damages claimed by Fairfield, which were supported by an affidavit establishing that Plaintiffs expended $190,645.85 in the underlying Cooper and Leavitt lawsuits.  Granite may not make arguments on reconsideration which should have been presented, considered and decided by the Court when it ruled on the motions for summary judgment.  Granite asserts that only within the last several days, it has learned about the settlement for $30,000 between Fairfield and CNA.  The Court notes that the docket contains a Notice of Settlement as to Defendants CNA, filed in this case by Plaintiffs on September 27, 2010.  The Court did not rule on the motions for summary judgment until February 14, 2011.  The notice did not include the amount of the settlement, but there was ample time for Granite to discover it and bring it to the Court's attention if it was relevant to the amount of damages requested by the Plaintiffs.

## Conclusion

The Court has reviewed Defendants' Motion for Reconsideration and the Order entered on February 14, 2011.  The facts and law which caused this Court to rule against Defendants have not changed.  The Court finds no manifest errors of law.  There is no basis under Rule 59 or Rule 60 for reconsideration.

**Accordingly,**

**IT IS ORDERED** that Defendants' Motion for Reconsideration (doc. 107) is DENIED.

**IT IS FURTHER ORDERED** that Defendants's Motion to Amend the February 14, 2011 Order to Certify it for Interlocutory Appeal (doc. 106) is DENIED, pursuant to Plaintiffs' decision to withdraw its bad faith claim against Defendants and to request the entry of a final Judgment against Granite (docs. 109,110).

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Stay Claims Against Chartis (doc. 111) during the pendency of any appeal, is GRANTED.

**IT IS FURTHER ORDERED** that Plaintiffs' bad faith claims against Defendants are DISMISSED.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall amend the Judgment entered on February 15, 2011, and enter Judgment against Granite for $190,645.85, pursuant to Fed. R. Civ. P. 54(b).

DATED this 24th day of March, 2011.

David C. Bury
United States District Judge